Good morning, Your Honors. May it please the Court, Jonathan Corbett IV, appellant here. There are two simple legal truths that both begin and end the appeal. The first is that TSA screeners are authorized to search. That's all they do. They look through bags, they search people's bodies, and they try to find things. The second is that TSA screeners are not authorized by law to seize. The government freely admits this. They're not cops, even if they were. It's not a crime to refuse a search and walk away from a checkpoint. It's true doublespeak that the government attempts to convince the Court that, A, their searches don't count as searches, and B, their seizures don't count as seizures. And it hasn't resonated with most courts when they've done it before. So, Counsel, I want to get right to a question that we all have, and that is, what are we doing where you have another case that has already been argued in this Court that would have priority over this one? So in terms of all of these issues about how we categorize TSA screening officers, I mean, can we even do anything there? Your Honor, I think it is a near certainty that the other court in the Luth-Hauser matter will address this with a binding decision. It is possible that the Court could sidestep it somehow or issue a non-presidential decision, in which case this Court would get the issue. I think it's unlikely. Is there anything about this case? So assuming that that other panel decides the question in a binding decision, is there anything about this case that is unique from that other case that their decision might not resolve this one? Oh, absolutely. So the FTCA issue that Luth-Hauser might resolve was actually decided in my client's favor in the court below. That's not actually the basis for the appeal. That's solely the government arguing that there's no jurisdiction. The issues that are unique to this case relate to the seizure. So my client at the checkpoint was told that she was not free to go. And as I mentioned before, TSA screeners are not authorized by law to seize. They cannot detain people, and it's not a crime to leave the checkpoint if you wish to terminate a search. There's a civil penalty for doing so, potentially if your refusal amounts to interference with a TSA screener. However, it's not a crime. You can't be detained for it. And the court below held that essentially the elements of false imprisonment weren't met here because we haven't shown that TSA acted without lawful authority. But TSA just doesn't have that lawful authority. And that's actually their entire argument as to the FTCA, is they're not law enforcement, so don't hold us under the law enforcement proviso. Now they're also arguing that, well, there was lawful authority to detain, and that's just not the case. What do we do with our decision in, I don't know how to say it, Akai, where we've said that requiring somebody who starts the screening process to complete the screening process and not just change their mind halfway through is permissible? So that case ruled that permissible wasn't the word. It's constitutional. The problem is that there is no statute or regulation that implements that potentially permissible avenue of penalizing a traveler. On the flip side, is there a statute or a regulation that expressly prohibits it? That prohibits TSA from detaining someone? That prohibits them from requiring somebody to complete the screening process. Well, doing so would be essentially affecting a detention of the person, right? But TSA screeners are not authorized to conduct those detentions. So if, hypothetically, there is someone who could detain someone for refusing a search, it's not the TSA screeners that were involved. And given that the regulations clearly put a civil penalty on it, it seems clear to me that a detention is just not a thing that's a part of this, that the penalty is a civil one. But if you can penalize someone even just civilly for not fully cooperating with the screening that you're directed to do, how is the person conducting that screening acting without legal... I can't remember the phrase. What's the word? Whatever. Legal permission, right? I mean, they are acting with legal permission until they tell the person that they may not leave. The issue is that when a TSA screener... When my client told this TSA screener, I want to go, I want out, I don't want you touching me there, the TSA screener proposed a pat-down of her genital area. Doesn't that take us right back to al-Qa'i? I mean, maybe you'll just have to repeat your answer because I'm just not understanding. I take your point that maybe the search here was more intrusive than what happened in al-Qa'i, but I don't understand how you get away from the holding in al-Qa'i that once the TSA starts the search that they can complete it before allowing someone to leave the checkpoint. So al-Qa'i was a... The appeal was based on a criminal matter in which the appellant argued that their search should have been suppressed because of constitutional grounds. All that case held was that if TSA were to do this, it would not be unconstitutional. And that's fine. So TSA or the Congress could pass a regulation or a statute right now that says TSA may detain travelers at the checkpoint, and it would be constitutional according to this court's decision in al-Qa'i. But that hasn't happened. The regulations and statutes say that TSA does not have the authority to detain people at the checkpoint. It's a fine distinction between what's constitutionally permissible and what's authorized by law, but there is a gap there. What authority do you rely on to say that requiring somebody to complete a screening process that they have began is a detention? In this case, my client was specifically told that she may not leave. That's a detention. And so it's a logical argument? You don't have a case or a statute or something that defines it in that way? I mean, I think pretty much any case that deals with when someone is detained or not, starting from Terry v. Ohio to present, deals with whether or not a person feels like they are reasonably free to go or not. In answer to Judge Forrest's question, you don't have a specific case with TSA screeners that talk about detention?  I could look. There are certainly a few where TSA has held people in different circumstances, but those cases are often constitutionally based. One of the issues is that before last year, most cases against TSA went as Bivens cases, and so constitutionality was key there. Now, with the Supreme Court virtually eliminating Bivens last year, we're limited to the FTCA. And in the FTCA, constitutionality is actually entirely irrelevant. The question is only whether or not there was authorization under the law to conduct that detention. There's a Ninth Circuit case that talks about when there's an exception to the exception under the Federal Tort Claims Act that it tends to favor the government. What's your response to that? Because there seems to be some ambiguity. Are these screeners investigative or law enforcement officers or not has obviously been a highly contested issue. Going back to that issue, I think that the case you're speaking of was talking about a different exception to the exception that was worded in a way that made that exception to the exception more limited. I think that if we go back to the Supreme Court's holding in Dolan where the Supreme Court said that the FTCA should generally be construed broadly, there's nothing from that Supreme Court mandate that would lead a court to say that as a general rule, exception to the exception should be construed narrowly. I think that under Dolan, one has to look at the text, and if there's nothing that indicates, hey, construe it narrowly, it's got to be construed broadly. And there's at least one piece there that should lead the court to go that way, and it's that word investigative or. If Congress just wanted to say law enforcement officers, people that actually have a badge and gun and can search and seize and do all this stuff, they could have said it, but Congress meant something with that investigative or portion. And what I submit to the court is they meant the people that conduct searches of the public, they put their hands on the public, they're the likely people to commit those kind of intentional torts. TSA screeners fall neatly into what Congress probably would have intended. TSA didn't exist at the time that Congress passed the FTCA, but they meant to expand this exception to the exception larger than law enforcement, and TSA is a logical expansion of that. Even if we thought that that was a good argument and made a lot of sense and was logical, I guess following up on Judge Gilman's point, I don't know what we do with the Foster case. I mean, how do you distinguish the Foster case? Again, I think that being a different exception to the exception, that needs to be looked at as an analysis of that text. This text, I feel like, is more broad. There's at least nothing specific in this text to make a court think that Congress meant it to be extremely narrow. So we go back to Dolan's presumption. It's kind of a weird thought in general to think that an exception to the exception is kind of a reverse on how things work. But, again, I urge the Court to go back to Dolan, which is a very broad command that the FTCA as a whole, whether it's an exception, an exception to exception, or just a part of the base, is to be interpreted broadly. Congress wanted to afford people a remedy, and they didn't have to, but they did. I wanted to ask a question about your trespass to Chattel's claim. From what you stated in the complaint, how would a fact finder assess possible damages on that claim? Anytime there's an interference with someone's property, the question will become what it's worth. If you stole my lawnmower for a week and didn't give it back, what's that worth to me? I don't know what the damages are worth. It could be worth $10, it could be worth $1,000, it could be worth whatever a judge thinks is necessary to compensate this person for their loss. But when someone's right to use their property is interfered with, there should be something. It might be a small amount of damages, but it should be something. But under TSA regulations, you're not entitled to retrieve your property until you've completed the search process, right? That's correct, but the property itself was cleared. The argument was made that someone else could have used her camera for her. That was already cleared. So someone else that's cleared, plus her cleared property, could have used that camera for her. Did she allege that anyone was available or willing to do that? Yes. I believe the complaint was pretty clear that she intended to ask a bystander and was unable to. And to be clear, the TSA instructions were not you can't touch your property. It was you can't take photos or video here. That's a wholly different thing, and that is a First Amendment violation for sure. But you're not bringing that argument. A First Amendment violation? No. You're bringing a trespass claim. Correct. Correct. But if TSA does not have the authority to preclude a bystander from using the camera because of the First Amendment, the trespass claim can succeed. So we have this statement from the Hamidi case, the Intel case, which granted is a totally different context, but there is a statement in that case about mere momentary or theoretical deprivation of use is not sufficient unless there's dispossession. You just talked about your theory is interference with use, so that would trigger this statement. Then you've got to say dispossession, but how is that the case? Where, as Judge Gilman points out, it's a matter of routine that you're not going to have your stuff until you get through this process. So everybody's in the same boat there. She was entitled to have her property used by another person. That's a dispossession. She was entitled to have use of that property, even if she couldn't physically touch it herself by a third party. That was precluded. That's disposition. And this wasn't mere momentary. The case that you're citing dealt with any – Does that argument then equate interference with use and dispossession to be the same thing? Not quite. The case that you're citing dealt with a computer network, someone using it to send emails that were not desired by the computer network. No one's actual use of the computer network was actually precluded by that. It wasn't such a burden on the network that it shut it down or anything like that. That was the momentary nature that that particular case, the Intel case, was speaking of. It's not speaking of a case where someone actually can't use their property at a given moment. Once someone tries to use their property and can't, it's no longer momentary. It's an actual real injury. Right. So that's – I would give you that's an interference with use. But this statement says that mere momentary interference with use isn't enough. And I'm coming back to the argument that you're making seems to make interference with use and dispossession exactly the same thing. There's not something in addition that happened that resulted in dispossession. It's the same event that you're saying is both the interference and the dispossession. Your Honor, we can try and figure out a distinction between use and possession. But at the end of the day, my client didn't have possession of her items. She wasn't allowed to have someone else take the item. The item was essentially seized. But did they tell her that someone else couldn't take the phone to film or that someone else couldn't touch the item? They told her that photos and videos in general were not allowed, so the camera couldn't be used. That's also a violation of TSA policy. If I could reserve my last 45 seconds. Thank you. Good morning. Daniel Aguilar for the United States. Starting off with the court's order directing the parties to address the effect of Loithauser, I agree that that case, there aren't any threshold impediments on it. So to the extent that the panel there reaches a precedential decision that would control the question here about whether sovereign immunity has been waived in the law enforcement proviso to encompass TSA screeners, that said, that panel has an issue to disposition, so I'm happy to address any questions on that question, legal questions as well. I have one question. I think I know the answer, but I'll let you respond to it. Is this a situation where we could say, well, assuming without deciding that there is not sovereign immunity, and this case could go forward, we'll deal with the alternative issue of has the plaintiff or had the appellant stated a claim, could we do that? Assuming without deciding the sovereign immunity issue. I don't believe so under Steele Co. Because the issue of sovereign immunity would go to the district court subject matter jurisdiction, and so that would be a threshold issue that this court would have to assure itself of before it could go ahead to reach the merits of that claim. Because I think Steele Co. instructs whether it's, you know, subject matter jurisdiction or any threshold issue, you do have to determine that before reaching whether a dismissal on the merits is appropriate. So I think that issue does need to be resolved first. All right. So then I think we agree with you that we're going to be in a holding pattern for some period of time after our argument today. So I think from my perspective what's most helpful is for you to talk about the uniqueness of this case and what we might still have to decide even after the other panel deals with the TSA screening status. So assuming that the Lloyd Hauser panel says this report lacks subject matter jurisdiction, the law enforcement proviso does not extend to TSA screeners, I think that ends this case, right, because all of the claims would fall under the intentional torts exception to the law enforcement proviso. I note that in her reply, plaintiff here says that doesn't necessarily apply to the trespass chattels claims, that that's independent and not an intentional tort. We disagree with that. The language of the intentional torts proviso is that the United States is not liable for any claims arising out of intentional torts. And as I take plaintiff's claim here, it is that I was told that I have to stay here in the secondary screening. I'm not allowed to use my own device that's over here. In other words, it's because I am being falsely imprisoned and not allowed to access my own devices that I now have a trespass to chattels claims. And because of that, we think it's encompassed within that intentional torts proviso as well. If the court didn't think about that, it could go ahead to reach the merits of the trespass to chattels claim. And in that case, we think the district court was right on dismissing it for failure to state a claim. What the district court said is that, look, I read this Intel case to say you have to allege an interference with use for a substantial amount of time. And so I'm giving you leave to amend your complaint to make such an allegation. And plaintiff declined to do so, stood on her complaint, and appealed here. The Intel case makes that clear. I think it even italicizes that torts where it has to be for a substantial amount of time. And if you look to this court's decision in Akai, which we were discussing earlier, there you have the person going through screening attempting to obtain the bag that got cleared passed. And the TSA screener said, no, no, you have to complete your own screening. You're right, that's gone through, and it was okay, but we still have to screen you, and you're not allowed to touch that yet. And I know, as we said, Akai is talking about constitutional reasonableness, but it would be a little odd for the court to go ahead and say this is what screening procedures are. It's eminently reasonable, especially in a post-9-11 world. But then leaves of silencio, yes, various intentional torts are being committed all throughout this procedure where you're not allowing the person to access the screen material because they still need to complete that screening. And so it's that allegation for a substantial amount of time that defeats the claim here. If the court needs extra evidence on that, the California Supreme Court was citing the second restatement of torts, I think it's section 218, that sort of talks about trespass to chattels. And it lays out kind of a helpful dichotomy. It says, you know, A, parks their car on the street, and then B, intending to play a joke, releases the brake and moves it forward three or four feet. There is no claim to trespass to chattels. Yes, it is an interference with the use of property, but it's not substantial. Alternatively, B takes off the brake and pushes the car around a corner. A can't find it for, and then the restatement chooses this, a period of an hour, right, a substantial interference with use. And then the restatement says that's a claim that sounds in trespass to chattels. And so it is that mere momentary interference, even if alleged, that defeats this claim. Otherwise, as I take plaintiff's position, every time a TSA agent says, no, you can't access your bags because you still need to go through secondary screening, that's always going to be a tort under California law. That would be a bit odd and surprising. And I think that that's why the district court did allow her to amend her complaint, and she chose not to so amend. And then on the false imprisonment, if you look at its paragraphs 22 to 36 of the complaint, there is no allegation that TSA agents restrained her. There's no allegation that they prevented her from trying to enter into the airport or go through. What they did was they said, you have to complete screening. And that's consistent with TSA regulations and policy. As the district circuit recognized in its Ram Singh decision, right, if you actually try to leave screening before it's completed, that can result in civil monetary penalties. It is unlawful to do so. And it's entirely consistent with that policy and practice for TSA screeners to say, no, you need to complete screening. Doing so does not, merely stating so without more, does not convert, you know, trying to carry out the screening process to ensure the safety of the passengers and aircraft into false imprisonment. It seems that Ms. Lundquist was cooperative and easy to work with. I mean, she didn't consent and she was upset about this, but she wasn't combative. Had she been and the TSA officers had physically grabbed her or, you know, sort of physically made her stay, would you view this claim in the same way? I agree it might be different. I'd note that in terms of the evidence of what TSA screeners are allowed to do, I think this is at SCR 6-7, the supplemental excerpts of record. They're not allowed to physically restrain somebody or use force to see them. That's why under TSA policy and congressional statutes, right, there are law enforcement officers at the screening sites. Usually if somebody is becoming combative or potentially dangerous, you call over the police officer to say, can you assist in this situation because that is the person who has authority to make arrests or detain or search for evidence for violations of federal law, et cetera. And I think the declaration states that if it's a case where the TSA screener needs to use force in self-defense, right, then maybe that's permissible, but generally not to restrain somebody. The usual policy is if somebody is doing that, there are other agents available to make sure that it doesn't come to blows, and there are other agents or officers who pursue civil violations, like in Ram Singh, that can sort of go after the fact and make sure that there is compliance with the screening procedures and law. So then I guess to put all that together, perhaps there would be a claim. I mean, it does change it significantly if, for example, a TSA screener physically grabs someone because then we're kind of outside of the legal privilege. I agree. That would be a different case, Your Honor, and I'm not sure exactly how it would come out. Is it in self-defense? Is it, you know, trying to stop somebody who has a potential weapon that's found on them in the moment and it's a TSA agent making a decision in the moment? Maybe they have authority to do so. Maybe they don't. I agree we would need a more circumspect analysis of that, both on the facts and then going further into legal authority. But where that's all been alleged here is merely stating you have to complete the screening. That doesn't give rise to a false imprisonment claim. And that's why the district court said, again, leave to amend. You can allege additional things here to try to make out a false imprisonment claim, and plaintiffs chose not to. What about the fact that the definition we're talking about is not just a law enforcement officer but an investigative officer? Why are these TSA screeners not investigative? Sure. So just going through the term as a whole, it's not just investigative, right, because it says investigative or law enforcement officer and then defines that as a person who's authorized by law to execute searches, seize evidence, or make arrests for violations of federal law. And so I know the district court here came to the conclusion that we think that encompasses TSA screeners, but I point to the district court's analysis in the Leuthauser case, along with the dissents of the Third Circuit and Pellegrino, written by Judge Krauss and others, and Judge Grinder's dissent in Iverson, along with the Eleventh Circuit's decision in Corbett. All of those opinions came to the conclusion that what the law enforcement proviso as a whole is talking about is traditional criminal law enforcement functions. And so getting specifically to investigative officers, the Pellegrino dissent actually discusses a Seventh Circuit decision called Bunch, Bunch v. United States. And what it held was is that there is an ATF forensics investigator who has authority by statute to enter into arson sites and essentially search for evidence if there's reason to believe it was caused by an explosive. And what the Seventh Circuit and Bunch held was that if this particular agent who you're suing, I believe, for malicious prosecution, alleging that they made up evidence, if they had that authority, that's executing a search as an investigative officer. You're still not allowed to make arrests. You don't go around as a general criminal law enforcement officer in that sense, but you are allowed to investigate and search in aid of a criminal prosecution. And so very likely there, you may fall within the proviso. In contradistinction, outside of the TSA context, I don't know of any cases that hold merely conducting an administrative search makes you fall within this proviso. You can have the Fifth Circuit's decision considering EEOC inspectors who have the right to inspect and copy, you know, business records for Title VII violations. Or you have the parole officers in the Second Circuit decision in Wilson who are allowed to enter into parolees' homes and potentially seize contraband in plain view with the person's consent. Both those cases, the courts plainly and easily held, they are not falling within the law enforcement proviso. And I think that that conclusion here is only underscored by this court's decision in Foster. And I know that my opposing counsel here was saying, well, Foster is limited to the particular text considered, but that's not actually what the court held. If you look at that last paragraph in Foster, it says there is some support for a narrow reading of this exception to the exception, the waiver of sovereign immunity. That's dispositive. This is not the consideration in Dolan. It specifically cites Dolan. And it says we're called to do the opposite of what Dolan was doing. Dolan was considering a reclamation of sovereign immunity. We're considering yet another waiver of sovereign immunity. And because of that, it must be strictly construed. And the court says we apply that general principle that if there's any ambiguities here, as the Supreme Court's explained, any plausible reading of the statute that would narrow the scope to not provide for the United States' liability, then there has been no clear and unequivocal waiver of sovereign immunity. And that's the rule that we think should apply here. To follow on to Judge Gilman's question, it seems like the government's position on this point is that investigative necessarily means related to a criminal investigation and perhaps prosecution. As a matter of language, I'm trying to figure out how you get there, right? Because you could have an administrative or a regulatory investigation, and all of it says is investigative or law enforcement. Right. So what is it about the text that tells you that investigative necessarily means connected to some sort of criminal proceeding? So I think it's reading the statute as a whole, right? Congress didn't just end at investigative or law enforcement and leave us to determine what that should mean. And then further define what that should mean. It's an officer, as opposed to employees, which are mentioned elsewhere, right? So we're already limiting it. Who's authorized by law to execute searches, a term of art that usually means, you know, pursuant to a warrant or based on a reasonable cause, or seize evidence, or make arrests, right? Obviously criminal there. Four violations of federal law. Again, the criminal context. And I think this is where the Supreme Court's opinion in Dolan is helpful. Because there it was, a claim that, oh, this is, we don't waive immunity for negligent transmission of mail, right? Because there it was, a mail package that had been left on somebody's porch. They slipped and fell. They had a negligence claim. And the assertion was, well, we're not liable for negligent transmission of mail. The Supreme Court said that's not what the statute says. It says loss, miscarriage, or negligent transmission of mail. And so you could think leaving the package is negligent transmission. But loss or miscarriage tells us what that's really about. It helps to inform this term that might have a broader scope. That's talking about misdelivering mail or just losing it in the system. Because otherwise, negligent transmission of mail might cover, you know, postal trucks running into cars. The quintessential example of an FTCA claim where the United States certainly is liable. And there the court said, so those other terms are helping to inform this meaning. And what the Supreme Court and this court have consistently applied to is that post-positive modifier. Four violations of federal law. Obviously, you can only make arrests for criminal violations of federal law. And so understood, that's applying to every other parallel part in this series earlier on. And we think this is the best reading of the statute. But again, I don't even think the court needs to go that far. If you did, we're happy to agree with you. But what the Supreme Court said in FAA versus Cooper is so long as there's a plausible reading of the statute. That this retains sovereign immunity. That the scope is not so wide as plaintiff suggests. Then there's been no clear and unequivocal waiver of sovereign immunity. And therefore, the United States is not liable. I take the argument that we might want to consider physical touchings as different than more administrative searching of records. Or that Congress ought to provide a better remedy. And I'm not trying to, you know, tamp down on those policy arguments. But they are policy arguments. And that's why they're best left to the politically accountable branches in the sovereign immunity context. Where that money is going to flow from the taxpayer treasury. That's a decision for Congress to make just like it did when it initially enacted this law enforcement proviso. And that is something that Congress can address. But we think because Congress hasn't clearly and explicitly addressed it here, the court ought not extend it. Thank you, Your Honors. All right, Mr. Corbett, we'll give you a minute and a half. Thank you, Your Honor. Two brief points. First, I gave some thought to the use versus dispossess, how they can make that distinction. And I think in the context of intel with a computer, it makes a lot of sense. If I have a computer in front of me, and it's my personal property, and someone makes it so that I can't actually access my email or whatever, I still have possession of my physical property. I just can't use it. So that's how I would make that distinction in the context of intel. The second is, you know, we're talking about the elements of false arrest. They admit that there's no ability to physically detain. And a false arrest can be affected without physical detention. If a police officer says, stay right there, you're not allowed to go, that's enough for an arrest. In this case, the distinction here is my client asked to leave. She said, I want to go, and they prevented her. They used words to do it, but they prevented her from going. It's not the same as them saying, you need to complete screening. They said, you cannot leave. That's where a false arrest was made. Thank you, Your Honors. All right, again, counsel, we thank you for your helpful arguments. The matter of Lundquist v. The United States will be submitted. And we are in recess for the morning. All rise. This court stands in recess.
judges: Gilman, FORREST, THOMAS